## In re COUNT DE TOULOUSE LAUTREC.

### (Circuit Court of Appeals, Seventh Circuit. June 14, 1900.)

### No. 699.

1. EXTRADITION—DECISION OF COMMISSIONER—REVIEW ON HABEAS CORPUS.

In proceedings for the extradition of one charged in the complaint with being a fugitive from the justice of a foreign country, and with the commission of an extraditable offense under the treaty between such country and the United States, where the commissioner before whom the hearing is had has jurisdiction of the person of the accused, his finding of probable cause is open on habeas corpus only to the inquiry whether there was legal evidence before him on which to exercise his judgment, and not as to the sufficiency of such evidence.

2. SAME.

A petition for a writ of habeas corpus in such a case, where it is admitted that the commitment was founded upon evidence, to be entitled to consideration must show either (1) all the evidence which was accepted by the commissioner as material, or (2) allegations of fact respecting such evidence which clearly overcome the presumption that legal evidence was heard in support of the commitment; and, in case of allegations of the latter class, mere general conclusions on the part of the pleader of the legal effect of the evidence are insufficient.

3. FORGERY—UTTERING FORGED INSTRUMENTS—INSTRUMENTS INNOCENTLY MADE.

Copies of bonds and coupons engraved for the use of corporations, which copies were innocently made by the engravers as samples, and never delivered to the corporations, are not genuine instruments; and, although they are not forged instruments so long as they are innocently retained by the engravers or others to whom they are delivered, they become forgeries when fraudulently uttered as genuine obligations, although without alteration, and the person so uttering them is guilty of the offense of uttering forged instruments.

Appeal from the District Court of the United States for the Northern Division of the Northern District of Illinois.

Newton Wyeth, for appellant.

William Brace, for appellee.

Before WOODS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge. Under the designation of Count Toulouse de Lautrec, alias Castano, the petitioner is imprisoned for the purpose of extradition, pursuant to section 5270 of the Revised Statutes of the United States, under a mittimus issued by a United States commissioner for the Northern district of Illinois; and this appeal is from an order of the district court for such district whereby his petition thereupon for writs of habeas corpus and certiorari was dismissed for insufficiency, and the petitioner was remanded to the custody of the marshal. The petition is voluminous in the recital of proceedings and matters which are wholly irrelevant to the jurisdictional issue involved, but singularly deficient in allegations of fact respecting that issue. It shows the fact of the hearing of testimony before the commissioner, presumably material for his decision, but does not purport to state even its substance; and in respect of the portion of the evidence which appears in the petition, and is made the basis of the argument for setting aside the action of the commissioner, the reference purports to be a mere summary or interpretation by

counsel of the testimony upon a single branch of the inquiry, as stated by way of a motion in the course of the proceedings before the commissioner, and thus brought into the petition by general averments only of its truth. The rule is well settled that the decision of the committing magistrate in extradition proceedings cannot be reviewed on habeas corpus if he has jurisdiction of the accused and of the subject-matter,—the offense charged being within the terms of the treaty of extradition,—"and the magistrate, in arriving at a decision to hold the accused, has before him competent legal evidence on which to exercise his judgment." Ornelas v. Ruiz, 161 U. S. 502, 508, 16 Sup. Ct. 689, 40 L. Ed. 787; Bryant v. U. S., 167 U. S. 104, 105, 17 Sup. Ct. 744, 42 L. Ed. 94. The petition in the case at bar shows that the accused was before the commissioner on a complaint made by the British consul which charged that the accused feloniously uttered in the dominion of Canada certain forged coupon obligations, well knowing the same to be forged, and "that he was a fugitive from the justice of the dominion of Canada," thus charging an extraditable offense under the treaty with Great Britain. Having jurisdiction, therefore, both of the accused and of the subject-matter, the finding by the commissioner of probable cause to believe the accused guilty of such offense is open only, on habeas corpus, to the inquiry whether there was legal evidence of facts before the commissioner on which to exercise his judgment, "and not whether the legal evidence of facts was sufficient or insufficient to warrant his conclusions." Ornelas v. Ruiz, supra; Bryant v. U. S., supra; Benson v. McMahon, 127 U. S. 457, 462, 8 Sup. Ct. 1240, 32 L. Ed. 234; In re Luis Oteiza y Cortes, 136 U. S. 330, 334, 10 Sup. Ct. 1031, 34 L. Ed. 464. With the fact conceded that the commitment was founded upon evidence, the petition for a writ is not entitled to consideration unless it shows either (1) all the evidence which was accepted as material, or (2) allegations of fact respecting such evidence which clearly overcome the presumption that legal evidence was heard in support of the commitment; and, in the case of allegations of the latter class, mere general conclusions on the part of the pleader of their legal effect, standing alone, are not sufficient. It is questionable, to say the least, whether this petition so states the evidence which was before the commissioner that an issue is presented, within the authorities referred to. Assuming, however, for the purposes of the case, that the evidence upon the question of forgery, as thus stated in the petition, is well averred and in accord with the fact, it is clearly legal evidence to establish the fact that the instruments of which felonious utterance is charged were not the genuine obligations of the purported promisors, but were, instead, false instruments. The assumed facts are substantially as follows: The instruments in question purported to be interest coupons issued in connection with corporate bonds, respectively, by (1) the city of Gloucester, Massachusetts; (2) the Fitchburg Gas & Electric Light Company, a corporation of Massachusetts; and (3) the Hyde Park Electric Light Company, a corporation of the same state. The original bonds and coupons in each instance were lithographed and printed by Francis Doane & Co., printers, of Boston, upon orders of the corporations, respectively; and the printers innocently retained

printed copies of each set, "as samples or proof sheets or otherwise," after delivering to the several corporations the printed sheets which were ordered. The printers from time to time gave out the copies thus retained by them to various parties as samples, and the petitioner so obtained from them the copies of which he is charged with the offense of uttering. It is further stated that the coupons were "in no manner altered or changed." Copies of these coupons, as produced before the commissioner, are not annexed to the petition; but certain of them were exhibited by counsel for the petitioner in the course of his argument at the bar of this court, showing that the signature of the appropriate officer is printed, and not written, and is apparently made as a lithographic facsimile of an original signature. The coupons thus exhibited further show a serial number rudely stamped in a space apparently left blank for that purpose by the printer, but the view which we are constrained to adopt of the character of these printed copies in the hands of the petitioner renders it unnecessary to determine whether the appearance of the coupons so produced in the manner indicated is entitled to consideration as evidence tending to show an alteration or change of the printed copy; and, for like reason, the conceded fact that testimony was received before the commissioner, but not presented in the record, which tended to show that no such stamping was on the coupons when they left the hands of the printers, is not considered in ascertaining whether legal evidence appears to warrant the finding that the coupons were forgeries.

The contention on behalf of the appellant, briefly stated, is this: That the facts recited in the petition show that the coupons in question were genuine in their origin, because printed under the direction and authority of the corporations respectively purporting to issue them, and in the exact form in which they were uttered by the accused; that the innocence of the printers in retaining the printed copies for samples or like legitimate purpose, and in giving them to the accused for such purpose, saves them from characterization as forgeries, and their subsequent utterance by the accused without alteration is not the utterance of a forged instrument, however fraudulent the transaction may otherwise appear; that fraudulent use in uttering is not legal evidence of the primary fact of forgery. These propositions rest in the first place on the erroneous assumption that the printed copies of the coupons so retained in the hands of the printers were authorized by the corporation, and therefore genuine in fact. The authority for the printing extended only to the impressions of which delivery was to be made, and was in fact made, to the corporation ordering them. Until their acceptance, adoption, and issue by the corporate authorities, it is obvious that even the copies so delivered were not corporate obligations, and were not genuine in fact. It is true that the making by the printers of the lithographic form of the instruments, including the lithographic facsimile of the signature on the coupon form, was authorized; and it is alike true that the impressions or copies made by the printers in excess of those delivered upon the orders, retained for innocent purposes, were not within the legal definition of forgery, while so retained either in their

hands or in the hands of others. The rule is well established that the mere making, innocently and without authority, of any form of instrument which would constitute forgery if made with fraudulent intent, is not forgery, in the eyes of the law, until such intent appears, but conduct which shows or implies fraudulent purpose or use is legal evidence of forgery in fact. In general terms, forgery is well defined in 2 Bish. New Cr. Law, § 523, as "the fraudulent making of a false writing which if genuine would be apparently of some legal efficiency." See, also, the general definitions in 3 Greenl. Ev. § 103; 9 Enc. Pl. & Prac. p. 550, etc.; 13 Am. & Eng. Enc. Law (2d Ed.) p. 1082, etc. But the making, in this view, does not consist alone of the manual operation of putting the instrument into form as the apparent obligation or act of another; and the authorities establish numerous instances wherein forgery is found, apart from the manual making or signing, as in the fraudulent procurement and use of a signature or writing as an obligation, when it is not so intended or understood by the maker. In Com. v. Baldwin, 11 Gray, 197, 198, the court says, "It would be difficult by a single definition of the crime of forgery to include all possible cases," and then refers to well-recognized instances not strictly within the general definition, including that of "the appending of a genuine signature of another to an instrument for which it was not intended," and that of the accused signing his own name where "it purports to be and is designed to be received as the instrument of a third person having the same name." The decision in Benson v. McMahon, 127 U. S. 457, 467, 8 Sup. Ct. 1240, 32 L. Ed. 234, is peculiarly applicable to the case at bar, in the circumstances which were held to be sufficient for the extradition of the accused to Mexico upon a charge of forgery. The alleged forged instruments were opera tickets which were printed in accordance with orders of the accused, without written signatures, and apparently without intentional fraud on the part of the engravers or printers. The contention was that the innocence of the actual makers of the tickets, and the absence of any written signature or symbol, or of any alteration or change by the accused, placed the instruments outside the definitions of forgery at common law, making the transaction a common-law cheat only. This view was overruled, and both the opinion of the court and the authorities cited are pertinent here. In that case the accused procured the printing of the tickets, and here the coupons were procured after the printing. In each the accused adopted the otherwise innocent work of the printer for the purpose of defrauding purchasers by selling as genuine an instrument which purported to have legal efficiency, but was neither intended nor issued as such by the purported maker. The instruments were equally false in both cases, and became equally forged instruments when the purpose arose to use them fraudulently. In the case cited the offense charged was forgery of the tickets, making it necessary to find its commission in the acts of the accused; but here the charge is that the accused uttered forged coupons, and proof that they are not genuine—are false tokens in fact, and so understood by the accused before his fraudulent use—is legal evidence that they were forgeries when uttered, without proof to identify the person who conceived the fraudulent purpose, or the particular time

or manner of its conception. The following authorities are deemed sufficient further citations in support of this view: Reg. v. Dunlop, 15 U. C. Q. B. 118; U. S. v. Turner, 7 Pet. 132, 8 L. Ed. 633; White v. Van Horn, 159 U. S. 3, 18, 15 Sup. Ct. 1027, 40 L. Ed. 55; Com. v. Ray, 3 Gray, 441, 446; Com. v. Foster, 114 Mass. 311; State v. Kroeger, 47 Mo. 552; Gregory v. State, 26 Ohio St. 510.

We are of opinion that the facts stated in the petition are competent evidence to establish the fact that the coupons were forged obligations, both at common law and within the statute of Illinois,—namely, the law of the forum as fixed by the treaty,—and that the petition fails to state grounds for the issue of the writs. The order of the district court is therefore affirmed.